UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JACK L. WILLIAMS, | ) |
| | ) |
|       *Plaintiff,* | ) |
| | ) |
|       *vs.* | )   No. 1:14-cv-01919-JMS-MJD |
| | ) |
| CAROLYN W. COLVIN, *Acting* | ) |
| *Commissioner of the Social Security* | ) |
| *Administration,* | ) |
| | ) |
|       *Defendant.* | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Jack L. Williams applied for disability and disability insurance benefits from the Social Security Administration ("SSA") in February 2012, alleging an onset date of April 2005. [Filing No. 12-5 at 2-19.] His applications were denied initially on March 28, 2012, and upon reconsideration on May 9, 2012. [Filing No. 12-3 at 3-5.] Administrative Law Judge ("ALJ") John H. Metz held a hearing on May 29, 2013, and issued a decision on July 9, 2013, concluding that Mr. Williams was not entitled to receive benefits. [Filing No. 12-2 at 21-32.] The Appeals Council denied review on September 30, 2014. [Filing No. 12-2 at 2-5.] Mr. Williams then filed this civil action, asking the Court to review the denial of benefits pursuant to 42 U.S.C. § 405(g) and 42 § 1383(c)(3). [Filing No. 1.]

1

# I.
## BACKGROUND

Mr. Williams was born in 1959, [Filing No. 12-2 at 47], and has a ninth grade education. [Filing No. 12-6 at 15.][1]  He previously worked as a lawn mower and press operator. [Filing No. 12-6 at 15.] Mr. Williams met the insured status requirements of the Social Security Act through June 30, 2011. [Filing No. 12-2 at 23.] Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4), the ALJ issued an opinion on July 9, 2013, determining that Mr. Williams was not entitled to receive disability benefits. [Filing No. 12-2 at 21-32.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Mr. Williams had not engaged in substantial gainful activity[2] since the alleged onset date. [Filing No. 12-2 at 23.]

- At Step Two of the analysis, the ALJ found that Mr. Williams suffered from the severe impairments of degenerative disc disease, scoliosis, osteoarthritis, and obesity. [Filing No. 12-2 at 23.]

- At Step Three of the analysis, the ALJ found that Mr. Williams did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 12-2 at 26.]

---

[1] Mr. Williams detailed pertinent facts in his opening brief, and the Commissioner did not dispute those facts.  Because those facts implicate sensitive and otherwise confidential medical information concerning Mr. Williams, the Court will simply incorporate those facts by reference herein.  Specific facts will be articulated as needed.

[2] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a).

- After Step Three but before Step Four, the ALJ found that Mr. Williams has the residual functional capacity ("RFC") to: "lift and carry fifty pounds occasionally and twenty pounds frequently. [He] can stand or walk in combination 6 of 8 hours and there are no restrictions with sitting. He is limited to frequent pushing and pulling with the bilateral upper extremities due to decreased range of motion. He can frequently bend, stoop, kneel, crouch, crawl, and balance. After March 2012, he cannot lift overhead and can reach forward frequently. He can occasionally climb stairs and ramps but should never climb ladders, ropes or scaffolds." [Filing No. 12-2 at 27.]

- At Step Four of the analysis, the ALJ found that Mr. Williams is capable of performing past relevant work as a press operator and lawn mower. [Filing No. 12-2 at 31.]

- The ALJ did not reach Step Five of the analysis due to his finding at Step Four that Mr. Williams could perform his past relevant work. [Filing No. 12-2 at 31.]

Mr. Williams sought review of the ALJ's decision from the Appeals Council, but that request was denied, making the ALJ's decision the Commissioner's final decision subject to judicial review. Mr. Williams then filed this action, asking that the Commissioner's decision be reversed and requesting an award of benefits, or in the alternative, that the case be remanded for further proceedings. [Filing No. 1.]

## II.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212,

3

214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id*. at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four

is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

### III.
### DISCUSSION

Mr. Williams makes three arguments in support of his appeal: (1) the ALJ erred in not evaluating whether Mr. Williams' impairments meet Listing 12.05C, related to intellectual disability; (2) the ALJ failed to build a logical bridge from the evidence to his conclusion adopting the opinion of the testifying physician over the opinions of the two Disability Determination Bureau ("DDB") physicians; and (3) the ALJ erred in not determining whether Mr. Williams is illiterate. [Filing No. 14 at 1-2.] The Court will address each argument in turn.

5

### A. Listing 12.05C

Mr. Williams argues that the ALJ erred in Step Three of the analysis because he failed to list and consider whether Mr. Williams' mental impairments satisfy Listing 12.05C. [Filing No. 14 at 11.] Mr. Williams claims that he meets Listing 12.05C for the following reasons: first, his Wechsler Adult Intelligence Scale – Third Edition ("WAIS-III") test results indicate that he has significant subaverage general intellectual functioning, [Filing No. 14 at 13]; second, he has deficits in adaptive functioning that manifested before the age of twenty-two, [Filing No. 14 at 13]; third, he has a verbal IQ of seventy, [Filing No. 14 at 14]; and fourth, he has the severe impairments of degenerative disc disease, scoliosis, osteoarthritis, and obesity, which impose an additional and significant work-related limitation, [Filing No. 14 at 14].

In response, the Commissioner argues that Mr. Williams does not have any impairment or combination of impairments that met or medically equaled any impairment under Listing 12.05C. [Filing No. 19 at 7.] The Commissioner states that no physician or psychologist ever found Mr. Williams to have "intellectual disability" or "mental retardation," or found that his impairments met Listing 12.05C. [Filing No. 19 at 8.] Further, the Commissioner claims that State agency physicians reviewed the record and concluded that Mr. Williams did not meet or equal a listed impairment. [Filing No. 19 at 8.]

In reply, Mr. Williams points out that the Commissioner has waived any response to the argument that the ALJ must discuss a listing by name when considering its applicability. [Filing No. 20 at 1.] He further claims that the Commissioner has waived any response to the argument that Mr. Williams' mental impairments satisfy Listing 12.05C. [Filing No. 20 at 1.] Mr. Williams states that, contrary to the Commissioner's argument, a physician's diagnosis of "mentally retarded" or "intellectually disabled" is not a requirement under Listing 12.05C. [Filing No. 20 at

2.] He reiterates that the requirements for the intellectual disability listing are in the introductory paragraph and paragraph C of Listing 12.05C. [Filing No. 20 at 3.]

"If a claimant has an impairment that meets or equals an impairment found in the Listing of Impairments, a claimant is presumptively eligible for benefits." *Minnick v. Colvin*, F.3d 929, 935 (7th Cir. 2015); 20 C.F.R. § 404.1520(d). To meet a listing for intellectual disability, the claimant must meet the diagnostic description of intellectual disability found in the initial paragraph of Listing 12.05, plus one of four separate criteria under paragraphs A through D. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A). Listing 12.05C reads, in part:

> **12.05 Intellectual disability**. Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> * * *

*Id.* § Pt. 404, Subpt. P, App. 1 § 12.05(C).

By failing to respond on this point, the Commissioner has waived any argument in response to Mr. Williams' arguments regarding Listing 12.05C. *See* Bonte v. U.S. Bank, N.A., 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument — as [Defendants] have done here — results in waiver."); *see also* Goodpaster v. City of Indianapolis, 736 F.3d 1060, 1075 (7th Cir. 2013). The Court will address the substance of Mr. Williams' argument, however, to ensure that remand to the ALJ is necessary.

The Court finds that the ALJ's failure to consider Listing 12.05C constitutes reversible error. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2002); *See Barnett*, 381 F.3d at 668 ("In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing."). Nowhere in the opinion does the ALJ mention Listing 12.05C; instead, he analyzes the case under the wrong listing, addressing the "paragraph B" four "broad functional areas," [Filing No. 12-2 at 25], which are factors not applicable to Listing 12.05C.[3] *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(A) ("The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings . . . . If your impairment satisfies the diagnostic description in the introductory paragraph [of 12.05] and any one of the four sets of criteria [under paragraph A through D], we will find that your impairment meets the listing.").

Additionally, Mr. Williams points to evidence regarding his mental impairments to support his argument that an analysis of Listing 12.05C was necessary. Mr. Williams' WAIS-III test resulted in a Verbal IQ score of seventy, Performance IQ score of eighty, and Full Scale IQ score of seventy-three, which he argues places him at subaverage general intellectual functioning. [Filing No. 12-17 at 19; Filing No. 14 at 13.] Mr. Williams states he has deficits in adaptive functioning because he does not spell well, does not read well, and has trouble following verbal instructions. [Filing No. 14 at 14.] He alleges that he meets the IQ requirement under paragraph C because as he has a Verbal IQ score of seventy. [Filing No. 12-17 at 19; Filing No. 14 at 14.] As to the last requirement, the ALJ found that Mr. Williams has other severe impairments of

---

[3] The four functional areas under Listing 12.00C that the ALJ considered apply to organic mental disorders (12.02), schizophrenic, paranoid and other psychotic disorders (12.03), affective disorders (12.04), and anxiety-related disorders (12.06). *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(A).

degenerative disc disease, scoliosis, osteoarthritis, and obesity. [Filing No. 12-2 at 23; Filing No. 14 at 15.] Further, the Commissioner's argument that no physician or psychologist ever found Mr. Williams to meet the criteria for intellectual disability or mental retardation is unavailing. As noted in the rule, a physician's diagnosis of intellectual disability is not a requirement under Listing 12.05C. The Court instructs that on remand, the ALJ must discuss Listing 12.05C and address whether Mr. Williams' mental impairments meet or equal that listing.

### B. Testifying Physician's Opinion

Mr. Williams argues that the ALJ does not provide a logical explanation regarding why he adopted the opinion of the testifying physician over the opinions of the DDB physicians. [Filing No. 14 at 16.] Both DDB physicians A. Dobson, M.D., and J. Sands, M.D., found that Mr. Williams should be limited to "light" work. [Filing No. 14 at 16.] During the hearing, however, Paul Boyce, M.D., testified that Mr. Williams could do "medium" work. [Filing No. 14 at 16.] In determining his RFC, Mr. Williams argues that the ALJ adopted Dr. Boyce's opinion over the opinions of the DDB physicians and gave the following reasons: the DDB physicians' opinions support a finding of "not disabled;" Dr. Boyce disagreed with the DDB physicians; and Dr. Boyce "did not find objective evidence to support limitations against wet, slippery surfaces and unprotected heights." [Filing No. 14 at 16.] Mr. Williams further states that if the ALJ determines that Mr. Williams can only perform light work at Step Four, then according to the Medical-Vocational Guidelines, Mr. Williams would be considered disabled because he is fifty years old, limited to light work, illiterate, and has a history of no work or past relevant work that was unskilled. [Filing No. 14 at 17.]

9

In response, the Commissioner argues that the ALJ weighed the evidence and gave greater weight to Dr. Boyce, who based his opinion on a review of the entire record and who heard Mr. Williams' testimony. [Filing No. 19 at 9.]

In reply, however, Mr. Williams states that the Commissioner gives a post hoc reasoning for the ALJ's reliance on Dr. Boyce. He cites SEC v. Chenery Corp., 318 U.S. 80, 87-88 (1943) to argue that the Commissioner may not use arguments not embraced by the ALJ. [Filing No. 20 at 6.]

The Court agrees with Mr. Williams. Unlike the Commissioner's claim, the ALJ did not articulate the weight he gave to each physician, but merely stated as follows:

> The residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services also support a finding of 'not disabled' (Ex. 7F; Ex. 11F). However, Dr. Boyce disagreed with the light residual functional capacity as determined by these physicians. He also did not find any objective evidence to support limitations against wet, slippery surfaces and unprotected heights.

[Filing No. 12-2 at 30.]

The Court requires that an ALJ build a "logical bridge from the evidence to the conclusion" so that the Court may "assess the validity of the agency's ultimate findings and afford [Mr. Williams] meaningful judicial review." Moore v. Colvin, 743 F.3d 1118, 1121 (7th Cir. 2014). State agency medical physicians are experts in Social Security disability programs and the ALJ will need to consider and explain the weight given to the opinions. SSR 96-6p; see Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir. 2004) (explaining that the ALJ properly weighed the opinions of two medical experts in determining the claimant's RFC). "Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." Indoranto v. Barnhart, 374 F.3d 470, 474 (7th Cir. 2004). Absent from the ALJ's opinion is a sufficiently articulated reason for adopting Dr.

10

Boyce's assessment of medium work over the DDB physicians' recommendation of light work in determining Mr. Williams' RFC. This is not harmless error, for the reason articulated by Mr. Williams: A finding of light work (if Mr. Willimas is found to be illiterate) could result in Mr. Williams being considered disabled. The failure of the ALJ to articulate why he rejected the DDB physicians' light work conclusion requires remand.

### C. Illiteracy

Mr. Williams' final argument is that the ALJ erred in not addressing whether Mr. Williams is illiterate. [Filing No. 14 at 18.] He claims that evidence in the record demonstrates that he is unable to read and write and, therefore, meets the definition of illiteracy.[4] [Filing No. 14 at 18.] As previously mentioned, Mr. Williams states that if the ALJ finds Mr. Williams to be limited to light work, a finding of illiteracy could mean that he is disabled. [Filing No. 14 at 18.] The Commissioner in his response states that a finding of illiteracy is irrelevant because the ALJ did not find Mr. Williams to be limited to light work. [Filing No. 19 at 9.] Both parties generally agree, however, that if the ALJ found Mr. Williams to be limited to light work, the finding of illiteracy is essential in determining whether Mr. Williams is disabled. [Filing No. 19 at 9-10; Filing No. 20 at 7.]

Given that the Court is reversing the ALJ's decision on the first two issues, the Court will not address the merits of Mr. Williams' claim of illiteracy. However, a determination of that claim would be necessary if Mr. Williams were given an RFC of light work on remand.

---

[4] A person meets the definition of illiteracy if that person cannot read or write a simple message such as instructions or inventory lists, even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling. 20 C.F.R. § 404.1564(b)(1)

11

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Mr. Williams benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). Further, the Court notes that the record lacks information about Mr. Williams' education. Both with respect to the determination of the application of Listing 12.05C, and the issue of literacy, those records would be helpful.

Date: August 18, 2015

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Timothy J. Vrana
tim@timvrana.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov